UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LORI R.,[1] | ) |
| | ) |
| *Plaintiff*, | ) |
| | ) |
| v. | ) No. 1:22-cv-02034-JMS-MJD |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| *Defendant*. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Lori R. applied for disability insurance benefits ("DIB") from the Social Security Administration ("SSA") on May 22, 2020, alleging an onset date of May 7, 2020. [Filing No. 13-5 at 2-5.] Her application was denied initially on December 11, 2020, [Filing No. 13-4 at 2-5], and upon reconsideration on May 11, 2021, [Filing No. 13-4 at 14-17]. Administrative Law Judge Fredric Roberson ("the ALJ") conducted a telephonic hearing on October 18, 2021, [Filing No. 13-2 at 36-68], before issuing a decision on December 9, 2021, in which he concluded that Lori R. was not entitled to benefits, [Filing No. 13-2 at 16-35]. The Appeals Council denied review on August 31, 2022. [Filing No. 13-2 at 2-7.] On October 18, 2022, Lori R. filed this action, pursuant to 42 U.S.C. § 405(g), seeking a review of the denial of her benefits. [Filing No. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

1

# I.
## STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[2]  "If a claimant satisfies steps one, two, and three, she will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then she must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy."  *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe."  *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).  In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling."  *Id.*  The ALJ uses the RFC at Step Four to determine whether the claimant can perform her past relevant work and, if not, at Step Five to determine whether the claimant can perform other work.  *See* 20 C.F.R. § 416.920.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits.  *Stephens*, 888 F.3d at 327.  When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy.  *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021).  Typically, a remand is also

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning Supplemental Security Income ("SSI") and DIB, which are identical in most respects.  Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520.  227 F.3d at 868.  Generally, a verbatim section establishes the same legal point with both types of benefits.  *See, e.g.*, 20 C.F.R. § 416.920.  The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Lori R. was 55 years of age on her application date.[3] [*See* Filing No. 13-5 at 2.] Lori R. has past relevant work as a traffic clerk, a routing clerk, and a production assembler.[4] [Filing No. 13-2 at 29.] The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a), and ultimately concluded that Lori R. was not disabled. [Filing No. 13-2 at 18-30.] Specifically, the ALJ found as follows:

- At Step One, Lori R. has not engaged in substantial gainful activity[5] since May 7, 2020, her alleged onset date. [Filing No. 13-2 at 18.]

- At Step Two, Lori R. had the following severe impairments: disorders of the skeletal spine and migraines. [Filing No. 13-2 at 18-22.]

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 13-2 at 22-24.]

- After Step Three but before Step Four, Lori R. had the RFC to perform light work except that "she should only occasionally climb stairs and ramps; she should never climb ladders, ropes, or scaffolds; she can perform occasional balancing . . . she can perform occasional stooping, kneeling, crouching, and crawling; she must avoid occasional, concentrated atmospheric conditions . . .

---

[3] The ALJ determined that Lori R. meets the insured status requirements of the Social Security Act through December 31, 2025. [Filing No. 13-2 at 18.]

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 CFR 416.972(a).

and she should avoid work within close proximity to very bright flashing lights and any other type of lighting more than what is present in an office setting." [Filing No. 13-2 at 24-29.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Lori R.'s age, education, work experience, and RFC, Lori R. is capable of performing her past relevant work as a traffic clerk, a routing clerk, and a production assembler. [Filing No. 13-2 at 29-30.]

### III.
### DISCUSSION

Lori R.'s arguments center around the alleged limiting effects of her migraine headaches. [Filing No. 9 at 18-36.] Migraines are a form of primary headache disorder that involves "throbbing and pulsating pain caused by the activation of nerve fibers that reside within . . . the brain and spinal cord" and may be accompanied by "visual, sensory, or other central nervous system symptoms." Soc. Sec. Ruling 19-4p; Titles II & XVI: Evaluating Cases Involving Primary Headache Disorders, SSR 19-4P (S.S.A. Aug. 26, 2019). Specifically, Lori R. argues that the ALJ erred in three ways: (1) failing to account for her potential absenteeism due to her migraines when crafting her RFC, [Filing No. 9 at 18-25]; (2) failing to properly assess her migraines under Listing 11.02(B), [Filing No. 9 at 26-31]; and (3) failing to properly assess her ability to perform daily activities in light of her alleged limitations, as required by Social Security Regulation ("SSR") 16-3p, [Filing No. 9 at 31-36]. The Court will address each issue in turn.

### A. The ALJ's Consideration of Lori R.'s Potential Absenteeism

Lori R. argues that the ALJ erred in crafting her RFC by not accommodating the limiting effects of her migraines. [Filing No. 9 at 23-25.] Specifically, Lori R. argues that the RFC does not account for the likelihood that her migraines would cause her to be absent from work. [Filing No. 9 at 23-25.] Lori R. argues that despite her testimony that she has "migraines at least once a week [during] which she has to lay down in a dark and quiet room" and the VE's testimony that

employers have limited tolerance for time off task and absenteeism, the ALJ "failed to incorporate" this evidence into an RFC limitation or explain why he found Lori R.'s migraines did not warrant an RFC limitation regarding absenteeism. [Filing No. 9 at 23-24.] Lori R. argues that "[a]t a minimum, the ALJ should have explained why [her] migraines did not result in a significant amount of off-task time or absenteeism." [Filing No. 9 at 25.] Accordingly, Lori R. argues that the ALJ failed to "confront evidence that [she] cannot meet the benchmarks for off-task behavior and absenteeism, and that failure to do so warrants remand." [Filing No. 9 at 25 (citing *Lothridge v. Saul*, 984 F.3d 1227, 1234–35 (7th Cir. 2021)).]

    The Commissioner responds that the ALJ reasonably assessed Lori R.'s functional limitations. [Filing No. 15 at 7.] The Commissioner argues that "no doctor opined any off-task limitation resulting from [Lori R.'s] impairments (including her alleged migraines)," and she "failed to create a record that demanded any such analysis." [Filing No. 15 at 7.] Pointing to the Court's opinion in *Jeffrey L. G. v. Kijakazi*, 2022 WL 3681789, at *3 (S.D. Ind. Aug. 25, 2022), the Commissioner argues that "an ALJ must consider whether a claimant requires off-task or absence limitations where that claimant presents credible evidence supporting such limitations," but Lori R. did not present such evidence. [Filing No. 15 at 14.] Accordingly, the Commissioner contends that the Court "should not disturb the ALJ's well supported assessment" and that remand is inappropriate. [Filing No. 15 at 14.]

    Lori R. did not file a reply brief.

    The RFC is an indication of the most that the claimant can do in a work setting on a regular and continuing basis despite her mental and physical limitations. 20 C.F.R. § 416.920(e); *Varga v. Colvin*, 794 F.3d 809, 812 (7th Cir. 2015); *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014). A "regular and continuing basis" means eight hours a day, five days a week, or an equivalent work

schedule. SSR 96-8p. The ALJ "need only include limitations [in the RFC] that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Imse v. Berryhill*, 752 Fed. App'x 358, 360-62 (7th Cir. 2018). While the ALJ need not discuss every piece of evidence in the record, the ALJ must "build an accurate and logical bridge from the evidence to [the] conclusion so that" the reviewing court "may assess the validity of the agency's final decision and afford [a claimant] meaningful review.'" *Giles v. Astrue,* 483 F.3d 483, 487 (7th Cir. 2007) (internal quotations omitted); *see also Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012) ("Although an ALJ need not mention every snippet of evidence in the record, the ALJ must connect the evidence to the conclusion; in so doing, he may not ignore entire lines of contrary evidence."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

As a general rule, the Court agrees with the Commissioner that the simple fact that an ALJ asks the VE about "the vocational consequences of a hypothetical limitation involving time off task" does not alone "impose [a] duty on the ALJ to consider an off-task limitation." [Filing No. 15 at 13.] However, an ALJ does have a duty to confront evidence of potential absenteeism and explain why he determined not to assess a corresponding RFC limitation. *See Lothridge*, 984 F.3d at 1234 (remanding where the VE testified that, for the claimant "to be employable, she would need to be able to stay on task for at least 90% of the workday and to have minimal tardiness and only one absence per month" but "[t]he ALJ neither cited evidence that [the claimant] could meet these benchmarks nor addressed the evidence that she could not"). It is well established that repeated absences from work for medical reasons could disqualify a person from sustaining gainful employment on a continuing basis. *See, e.g., Voigt v. Colvin*, 781 F.3d 871, 874 (7th Cir. 2015). This point is underscored by the VE's testimony in this case that employers' tolerance for

7

absenteeism considers not only an employee's need to miss work due to illness but also "tardiness and leaving work early." [Filing No. 13-2 at 64.] Accordingly, an ALJ may be obligated to address a claimant's ability to sustain work if the claimant presents sufficient evidence of incapacitating migraines that exceed employers' tolerance for absenteeism. *McCorkle v. Kijakazi*, 2023 WL 179983, at *4 (7th Cir. Jan. 13, 2023); *Moore v. Colvin*, 743 F.3d 1118, 1126 (7th Cir. 2014); *Pepper v. Colvin*, 712 F.3d 351, 363 (7th Cir. 2013).

The Court finds the Seventh Circuit's holding in *Moore,* 743 F.3d at 1126, instructive regarding the ALJ's assessment of Lori R.'s migraines. In *Moore*, the ALJ similarly determined that the claimant's migraines constituted a severe impairment but ultimately concluded that the claimant could perform her past relevant work. *Id.* at 1121. Despite noting that the claimant's "migraines occur once to twice weekly now," the ALJ's decision in *Moore* did not "reflect any likelihood of absences or breaks at work related to migraines," despite testimony from the VE that the claimant "could not perform her past work or any work if she would be absent once or twice a week, and in fact stated that she could not perform her past work if she would miss any of the training days at all." *Id.* at 1126-27. Accordingly, the Seventh Circuit concluded that remand to the SSA for further proceedings was warranted because "the ALJ should have at least included in the RFC determination the likelihood of missing work." *Id.* at 1126.

As in *Moore*, the ALJ in this case failed to connect the dots between the VE's testimony, the record evidence, and his ultimate conclusion regarding Lori R.'s RFC. With respect to the number of days that an employee is allowed to miss work, the VE in this case testified that "[e]mployers don't want to see anything greater than one day per month and that's going to include tardiness and leaving work early." [Filing No. 13-2 at 64.] The VE further testified that Lori R. would be subject to a "probationary period" for roughly 30 days, which would restart if Lori R.

8

had to be absent due to illness but employers would be unwilling to "restart [the probationary period] multiple times." [Filing No. 13-2 at 64.]

When discussing the limiting effect of Lori R.'s migraines, the ALJ noted that "the medical evidence of record shows at times, [Lori R.'s] migraines were quite bothersome and required her to miss work, as she was sensitive to light and sound." [Filing No. 13-2 at 27.] The ALJ further noted that Lori R. "stated she had 15 to 16 migraines the prior month, lasting from one hour to all evening." [Filing No. 13-2 at 25.] The ALJ also observed that Lori R.'s symptoms "reportedly improved with rest and a dark room, as well as[] medication." [Filing No. 13-2 at 26.] These observations are consistent with Lori R.'s testimony regarding the days that she is experiencing a migraine as elicited by the ALJ during the hearing:

> Q Okay. All right. So let's go ahead and I want to have you kind of break down what a migraine is like for you. So, first of all, can you just describe when you're having a migraine what is that like and what do you feel?
>
> A I'm nauseated and to the point to where I, I don't want to eat, sometimes to the point that I'm vomiting. I'm constantly in the dark and my husband is all the time saying, you know, you are like you're a vampire and it's good on our electric bill, I'll say that, but that's about the only thing that's good about it.
>
> \* \* \* \*
>
> Q Okay. All right. Well, you touched on this a little bit, but in an average month, how many migraines are you having that where you're like that, where you're basically lying down most of the day and needing to be in a dark room?
>
> \* \* \* \*
> A Last month I had at least 15/16.

[Filing No. 13-2 at 49-51.] The ALJ seemingly found this testimony persuasive because he "included an additional exertional limitation to avoid bright lights based on the [Lori R.'s] complaints of being sensitive to light." [Filing No. 13-2 at 29.] However, it is unclear to the Court why the ALJ included an RFC limitation related to Lori R.'s migraine induced photosensitivity but

9

not an RFC limitation related to Lori R.'s need to rest or lay down when she is experiencing a migraine.

In any event, the ALJ failed to provide any discussion of why Lori R.'s need to be "basically lying down" in a dark room when she is experiencing a migraine would not require her to be absent from work or functionally absent via tardiness or early dismissal more than once a month. [*See* Filing No. 13-2 at 64-65.] The absence of analysis on this issue is amplified by the evidence in the record regarding the frequency of Lori R.'s migraines. [*See, e.g.,* Filing No. 13-2 at 26 (Lori R. testifying that "I've always had daily headaches, but the migraines are so frequent now that I don't even have enough of my migraine medicine to cover them monthly."); Filing No. 13-9 at 25 ("She is getting about 1 migraine a week. At times her migraines are quite bothersome and require her to miss work."); Filing No. 13-9 at 72 ("She has had migraine for about 16 days per month. She is on imitrex which helps some, [s]he is also on Amitriptyline and Metoprolol, but she still has had frequent migraines.").]

In short, if the ALJ agrees that Lori R. experiences incapacitating migraines more than once a month, she cannot perform her past relevant work based on the testimony of the VE during the hearing. If the ALJ believes that Lori R.'s migraines would not cause her to miss work, he must explain how he reached this conclusion. There is no way for the Court to tell beyond pure speculation. Because the ALJ did not explain the basis for his ultimate RFC assessment, the Court cannot "trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)). Accordingly, the Court finds that ALJ did not build a logical bridge between the evidence and the RFC, and the Court must remand this case for further consideration. *See Peeters*, 975 F.3d at 641.

### B. Remaining Issues

Lori R. raises two additional issues: (1) that the ALJ erred in his determination that her migraines did not meet or equal Listing 11.02(B), [Filing No. 9 at 26-31]; and (2) that the ALJ erred under SSR 16-3p by considering her daily living activities but ignoring that she "performs daily activities with significant limitations, with help, or with breaks to rest," [Filing No. 9 at 31-36].

The Court need not resolve these issues because it finds that the issue discussed above is dispositive. However, the Court cautions the ALJ that he should not consider Lori R.'s daily living activities without explaining how these activities translate into an ability to maintain full-time employment. *Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010); *Gentle v. Barnhart*, 430 F.3d 865, 867–68 (7th Cir. 2005) ("The [ALJ's] casual equating of household work to work in the labor market cannot stand"). The Seventh Circuit has repeatedly "bemoaned" when ALJs "equate[] the ability to engage in some activities with an ability to work full-time, without a recognition that full-time work does not allow for the flexibility to work around periods of incapacitation." *Moore*, 743 F.3d at 1126 (collecting cases).

Moreover, if the ALJ considers Lori R.'s daily activities relevant to her capacity to sustain employment, then he must also confront evidence regarding how Lori R. completes these activities. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008). For example, if the ALJ considers Lori R.'s ability to "care for young children at home" relevant to her capacity to sustain full-time work, he should also consider that she does so "maybe three times a week," during which she has the flexibility to lay down in a darkened room while her grandson plays with toys if she experiences a migraine. [Filing No. 13-2 at 54.] In his analysis, the ALJ must explain how Lori R.'s daily living activities translate to an ability to maintain full-time employment, keeping in mind the

11

"critical differences between activities of daily living and activities in a full-time job," including flexibility in scheduling, the ability to get help from others, and the fact that Lori R. is not "held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012) ("The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by [ALJs] in social security disability cases."). On remand, the ALJ should ensure that he justifies his analysis with "specific reasons supported by the record," *Pepper*, 712 F.3d at 367, and that he builds an "accurate and logical bridge between the evidence and conclusion," *Villano*, 556 F.3d at 562.

## IV.
## CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying Lori R. benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four) as detailed above. Final judgment shall issue accordingly.

Date: 6/23/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**